UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EVAN HART<br>　　Plaintiff, | : | CIVIL ACTION NO.<br>3:07cv222(WWG) |
| VS. | : | |
| FAMILY DENTAL GROUP, P.C.<br>AND KENNETH EPSTEIN,<br>　　Defendants. | : | February 12, 2007 |

FILED
2007 FEB 13  A 11: 40
US DISTRICT COURT
BRIDGEPORT, CONN.

## COMPLAINT

### INTRODUCTION

1. This is an action to redress the discriminatory treatment suffered by the Plaintiff in violation of the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §. 4301 *et seq.*

### JURISDICTION

2. Jurisdiction of this Court is invoked under the provisions of 38 U.S.C. § 4323, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

3. Plaintiff has exhausted his administrative remedies by filing a complaint with the Veterans' Employment and Training Service. The Attorney General has declined representation of Plaintiff.

### PARTIES

4. During all times relevant to this complaint, Plaintiff, a dentist licensed to practice dentistry in Connecticut, resided and worked as a dentist for Family Dental Group, P.C. ("FDG") in the State of Connecticut.

5. During all times relevant to this complaint, Plaintiff was a member of the

U.S. Army Reserves, and remains as such assigned to the 405th Combat Support Hospital.

6. During all times relevant to this complaint, FDG was a Connecticut Professional Corporation engaged in the business of dentistry.

7. During all times relevant to this complaint, FDG was an employer within the meaning of 38 U.S.C. § 4304(4).

8. During all times relevant to this complaint, Kenneth Epstein ("Epstein") was President of FDG and a person to whom FDG delegated the performance of employment-related responsibilities within the meaning of 38 U.S.C. § 4304(4).

**FACTS**

9. During all times relevant to this complaint, Plaintiff was a general dentist in the U.S. Army Reserves.

10. Epstein and FDG hired Plaintiff on August 4, 2001.

11. In March 2003, during his employ with FDG, Plaintiff was called to active duty in North Carolina.

12. Upon notification of the call, Epstein stated that he would have never hired Plaintiff had he known about his service.

13. Upon his return from the Reserves, Plaintiff promptly returned to work for FDG.

14. In early July 2004, the Army informed Plaintiff that he was being deployed to Iraq that coming September.

15. Upon notification of the call, Epstein stated that never again would he hire anyone in the military.

16. During the days prior to Plaintiff's departure for Iraq, Epstein, on several occasions, made comments to Plaintiff, such as "it's been nice knowing you" and "you are going to Iraq to drink beer with your buddies."

17. Given Epstein's attitude towards the Plaintiff's previous mandatory service and his current call, the latter asked Employer Support for the Guard and Reserve ("ESGR") to contact Epstein with regard to USERRA obligations.

18. In response, ESGR wrote Epstein a letter explaining his duties under USERRA as an employer.

19. During his deployment in Iraq, given his previous experience with Epstein, Plaintiff kept fixed contact with him regarding his employment with FDG. On several occasions Epstein said and wrote (via e-mail) that Plaintiff's return to FDG was required and anticipated.

20. Contemporaneously, however, Epstein complained to, among others, Dr. Joseph Blum, a dentist who helped cover during Plaintiff's leave, of how "[Plaintiff] was doing it to him again," that is, taking obligatory leave to serving in Army.

21. Based on, among other factors, Epstein's representations as described in Paragraph 19, Plaintiff forewent the possibility of additional service time and the associated tax free salary, and returned to FDG on January 17, 2005.

22. On January 20, 2005, three days after his return to FDG, Epstein informed Plaintiff that his employment with FDG would be terminated in 60 days (later reduced to 30 days).

23. According to Epstein's discharge letter, Plaintiff's termination was "[n]ot 'for cause,'" and "no reflection on [Plaintiff] or [his] performance and should be seen as an honorable discharge."

24. Plaintiff immediately contested the validity of the termination and alerted Epstein, as he had preciously done, of the duties of an employer under USERRA.

25. Epstein intentionally mocked Plaintiff and his service and intentionally disregarded USERRA requirements.

26. Accordingly, on February 7 2005, Plaintiff filed a USERRA complaint with the United States Department Labor's Office of Veteran's Employment and Training ("DOL-VETS").

27. In the aftermath of Plaintiff's USERRA complaint, Epstein agreed to extend the Plaintiff's termination notice for a total of 180 days period, which period would begin to run retroactively on January 20, 2005.

28. Against the wishes of Plaintiff, this extension temporarily halted the DOL-VETS investigation.

29. Eventually, on July 16, 2005, at the end of the 180 day period, Epstein proposed to Plaintiff a one-paragraph document calling for Plaintiff's employment on a "per diem" basis.

30. On July 19, 2005, Plaintiff informed Epstein in writing that he did not wish to work on a per diem basis and that his actions were again in violation of USERRA.

31. On July 20, 2005, Epstein again discharged Plaintiff and informed him that the latter had "worn out his welcome" since he had "reported him" to the DOL-VETS.

32. In light of his second discharge, Plaintiff eventually requested that DOL-VETS re-open his case against Epstein and FDG.

33. The DOL-VETS agreed to re-open matter, and eventually, in a letter dated March 20, 2006 and addressed to Epstein's counsel, the DOL-VETS found that,

> [Plaintiff] was never fully or properly reinstated to the position and status he had prior to his September 2004 mobilization with the United States Army Reserve. We feel his reinstatement was, at best, conditional for a period of only 180 days and was therefore, (sic) not a statutorily complete reinstatement under [USERRA]. In addition, evidence was produced during the investigation to also conclude that [Plaintiff's] military service was a motivating factor in actions taken against him, and thereby constituted discrimination.

34. Notwithstanding the DOL-VETS' determination, Epstein did not reinstate Plaintiff.

35. Instead, approximately four weeks after the DOL-VETS re-opened the matter, Epstein and FDG caused a civil cause of action to be filed against the Plaintiff in the Superior Court of Connecticut claiming Plaintiff's alleged breach of a non-compete clause (such action was filed, but to this day has not been prosecuted).

## FIRST COUNT:  Hart vs. FDG

1-35. Paragraphs 1-35 are hereby incorporated by reference and made part of this First Count.

36.  Because membership in the U.S. Army was the motivating factor and made a difference in FDG's treatment of Plaintiff and its decision not to reinstate him to a position in accordance to USERRA proscriptions, and twice discharged him, FDG violated USERRA Section 4311(a) with intentional, knowing and, or reckless disregard of that Act's proscriptions.

## SECOND COUNT:  Hart vs. FDG

1-35. Paragraphs 1-35 are hereby incorporated by reference and made part of this Second Count.

36.  Because Plaintiff's actions to enforce the protection afforded him by USERRA were the motivating factors and made a difference in FDG's treatment of Plaintiff and its decision on several occasions to retaliate and discriminate against Plaintiff, FDG violated USERRA Section 4311(b) with intentional, knowing and, or reckless disregard of that Act's proscriptions.

## THIRD COUNT: Hart vs. Epstein

1-35. Paragraphs 1-35 are hereby incorporated by reference and made part of this Third Count.

36.  Because membership in the U.S. Army was the motivating factor and made a difference in Epstein's' treatment of Plaintiff and his decision not reinstate him to a position in accordance to USERRA proscriptions, and twice

discharged him, Epstein violated USERRA Section 4311(a) with intentional, knowing and, or reckless disregard of that Act's proscriptions.

**FOURTH COUNT: Hart vs. Epstein**

1-35. Paragraphs 1-35 are hereby incorporated by reference and made part of this Second Count.

36.    Because Plaintiff's actions to enforce the protection afforded him by USERRA were the motivating factors and made a difference in Epstein's treatment of Plaintiff and his decision, on several occasions, to retaliate and discriminate against Plaintiff, Epstein violated USERRA Section 4311(b) with intentional, knowing and, or reckless disregard of that Act's proscriptions.

WHEREFORE, Plaintiff claims judgment against the Defendants as follows:

1. Back pay and front pay in an amount to be determined by the trier of fact with interest from the date said sum was due;

2. Compensatory damages in an amount to be determined by the trier of fact;

3. Liquidated or double or treble damages for willful violations of USERRA;

4. Punitive damages in an amount to be determined by the trier of fact;

5. An injunction permanently enjoining Defendant, it officers, agents, employees, successors, assigns and al persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of sex;

6. Attorney's fees and costs of this action; and

7. Such further relief as this Court deems necessary and proper.

THE PLAINTIFF

By _____
Riccardo L. Pate, Esq.
155 Post Road East
Westport, CT 06880
(203) 226-9922
Federal Bar No. ct 15057